UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br> )<br>    Plaintiff/Respondent,  )<br> )<br>V.  )<br> )<br>EDGAR LERMA FLORES,  )<br> )<br>    Defendant/Movant.  ) | Criminal Action No. 5: 15-050-DCR<br>and<br>Civil Action No. 5: 18-484-DCR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Edgar Lerma Flores pleaded guilty on October 7, 2015, to conspiring to distribute five kilograms or more of cocaine and conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Record Nos. 82, 124] Flores was sentenced to 300 months' imprisonment on each count, to run concurrently, to be followed by a total term of five years of supervised release. [Record No. 134] Flores's sentence was affirmed on appeal. *United States v. Romero*, 704 F. App'x 445, 446-49 (6th Cir. 2017). Flores has now filed a *pro se* motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel at the re-arraignment, sentencing, and during appellate phrases of his prosecution. [Record No. 209]

**I.**

Flores originally retained attorney Dan Carman in May 2015. [*See* Record Nos. 6, 177.] He argues that Carmen's performance was deficient because he failed to secure a "lenient" plea agreement under Rule 11(c)(1)(B) or (c)(1)(C) of the Federal Rules of Criminal Procedure. Flores also contends that Carman assured him that if he followed his instructions

- 1 -

and responded to the Court with "yes, Your Honor," he would be sentenced to no more than ten years' imprisonment. [Record No. 209-1, p. 3-4]

Following the entry of his guilty plea, Flores also retained attorney Joseph Lopez to act as co-counsel to Carman during sentencing. [Record No. 86] Flores alleges that Carman and Lopez provided deficient representation during the sentencing phase of the proceedings because they lacked knowledge regarding the applicable United States Sentencing Guidelines and continued to promise him that he would receive a sentence of no more than ten years. Flores also contends that Carman and Lopez failed to present evidence regarding mitigating factors during sentencing and that they improperly failed to object to the drug quantity attributed to him and failed to object to his criminal history calculation. [Record No. 209, p. 6] Next, Flores asserts that he did not have a sufficient opportunity to review his Presentence Investigation Report ("PSR") with his attorneys. [Record No. 209-2, p. 9]

Mark Wettle was appointed under the Criminal Justice Act to represent Flores during his appeal. [Record No. 180] Flores argues that Wettle provided ineffective assistance during the appeal process because he failed to assert a litany of issues that Flores asked him to raise. [Record Nos. 209-1, p. 2; 209-2, pp. 13-14] Flores also asserts that Wettle's representation was ineffective *per se* because he failed to file a petition for a writ of certiorari, as Flores requested.

## II.

Flores challenges are governed by the well-known "performance" and "prejudice" standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), because he claims he was denied the effective assistance of counsel guaranteed by the Sixth Amendment. To establish that counsel's assistance was constitutionally ineffective, a petitioner must show that

his "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims" unless the record conclusively shows that the petitioner is not entitled to relief. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). *See also* 28 U.S.C. § 2255(b). The Court has reviewed Flores's claims and finds that the record conclusively shows that he is not entitled to relief on most of his claims. However, a limited evidentiary hearing will be required to resolve Flores's claim that attorney Carman told him to "just say yes" to the Court's inquiries to obtain a favorable sentence.

### III.

#### A.

Flores's assertions that Carman performed deficiently by failing to secure a "favorable contractual plea agreement" are without merit. Flores was charged with two counts of conspiring to distribute controlled substances and two counts of possession with intent to distribute controlled substances. Each charge carried a mandatory statutory minimum of ten years' imprisonment and a maximum of life. Attorney Carman negotiated with the United States a plea agreement in which Flores conceded guilt on the two conspiracy charges and the remaining counts were dismissed. And due to his timely entry of a guilty plea, Flores received a three-level reduction to his base offense level for acceptance of responsibility.

To the extent Flores argues that counsel should have obtained a more favorable plea agreement, there is no suggestion that the government was willing to agree to any other terms. And under the facts presented, the undersigned would not have accepted a binding plea

agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Courts generally do not accept plea agreements under Rule 11(c)(1)(C) unless "the agreed sentence is within the applicable guideline range. . . ." U.S.S.G. § 6B1.2(c). Flores's guidelines range was 235-293 months—well in excess of the 120 month (maximum) sentence he argues counsel should have obtained. For these reasons, counsel's failure to obtain a more favorable plea agreement does not constitute ineffective assistance and the defendant was not prejudiced by counsel's failure to do so.

Flores also contends that Carman constantly guaranteed him that if he followed Carman's instructions and responded to the Court with "yes, Your Honor," he would be sentenced to no more than ten years in prison. [Record Nos. 209-1, pp. 3-4; 209-3, p. 2] Flores alleges that he tried to relay these promises to the Court, but he was unable to do so. *Id.* He also states that, while he "clearly accepted responsibility [for] the cocaine," he "doubted existence of the methamphetamine during plea colloquy and sentencing." [Record No. 209-2, p. 6]

Although Flores does not say so explicitly, he suggests that he relied on Carman's promises of a "lenient sentence" in deciding to plead guilty. A guilty plea is valid if it was entered into both voluntarily and intelligently, as determined under the totality of circumstances leading up to the plea. *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). Courts must be able to rely on a defendant's statements made during a plea colloquy, and "dispositions by guilty pleas are accorded a great deal of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Where the district court has scrupulously followed the procedure required for accepting the defendant's guilty plea, the

defendant ordinarily is bound by his statements in response to the court's inquiry. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

Here, the Court began by reminding Flores that he had been placed under oath and that his answers must be truthful. [Record No. 96, p. 4] Flores acknowledged understanding that he could be prosecuted for failing to give truthful answers during the proceeding. He advised the Court that he was twenty-eight years old and had attended school through the third year of middle school in Mexico. He was able to read and write in Spanish, was not under the influence of any drugs or alcohol, and had never had (or been diagnosed with having) any type of mental health issues. *Id.* at 5-6. Attorney Carman reported that he had not had any problems communicating with Flores using an interpreter, and that he believed Flores understood the nature of the charges. *Id.* at 6-7.

Flores acknowledged that he had received a copy of the indictment. *Id.* at 7. And when asked whether he had discussed the charges and the case in general with Carman, Flores responded: "part of the discovery is that sort of things. I haven't seen it." *Id.* at 8. Carman then advised the Court as follows:

> Your Honor, we've gone over this. And I apologize for any hiccups. It's my understanding we've gone over discovery at the Grayson County Detention Center in the case. Much of the discovery in this case involved witness statements, and so those are things that just kind of needed to be related to him. . . . Well, or just read to him . . . from papers. And so when we were talking about discovery, you know, I think—I remember we had a discussion about— much of the discovery issues what people have said. And so there's—that's not as tangible as a videotape, for example, an audiotape. And so I think that's what I've tried to, you know, convey to [Flores]. Certainly, I think he also understands that other than witness statements, the discovery against him would include drugs that were found, you know. . . . I think he understands all of that.

*Id.* at 8-9.

The Court then asked Flores again whether he had had an opportunity to discuss the charges and the case in general with his attorney. Flores responded, "partly yes, and partly no, but yes." *Id.* at 9. As a result of this ambiguous response, the Court inquired further: "There are certain charges that are made against you in the case, and then there's also the overall case that involves other parties that have been charged. Have you had the opportunity to discuss the charges that have been made against you in the case with your attorney?" Flores responded "no." *Id.* At that point, Carman was given the opportunity to confer with Flores off-the-record, with the assistance of an interpreter.

Following Carman and Flores's off-the-record discussion, the Court asked Flores whether he understood the charges against him. *Id.* at 10. Flores acknowledged that he did. Flores went on to advise the Court that he had the opportunity to discuss the entire case with Carman, and that he was satisfied with the representation Carman had provided. *Id.* Flores also acknowledged that he understood the terms and conditions of the plea agreement and its supplement, which he had signed after reviewing the documents with Carman and an interpreter. *Id.* at 11. Next, Flores confirmed that the plea agreement and supplement represented his only agreement he had with the government.

The Assistant United States Attorney assigned to the case summarized the plea agreement aloud, including the following provisions:

> The maximum statutory punishment for Counts 1 and 2 is imprisonment for not less than 10 years. However, the parties have entered into guideline recommendations and calculations to this Court, and they may object to or argue in favor of other calculations. This guideline recommendation is not binding upon the Court. The parties agree that the defendant's relevant conduct includes at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine, and at least five but less than 15 kilograms of cocaine. This is a base offense level of 36.

*Id.* at 13. Flores acknowledged that the attorney for the United States accurately summarized the essential parts of the plea agreement. *Id.* at 15. He also told the Court that no one else had made any promises to him that had caused him to sign the documents or to indicate that he wished to enter a guilty plea. *Id.*

The Court then advised Flores of the possible penalties, which could range from ten years to life imprisonment on each count. Flores was also informed that he would not be able to withdraw from his plea agreement simply because his attorney's prediction or his belief about his guidelines' calculation was incorrect. *Id.* at 20.

Flores acknowledged that he intended to plead guilty because he was, in fact, guilty of the offenses charged in Counts 1 and 2 of the indictment. *Id.* at 27. The Court accepted Flores's guilty plea, finding that he was fully competent and had entered a knowing and voluntary guilty plea which was supported by an independent factual basis. The Court concluded by asking Flores whether "there [was] anything I asked you, and even after clarification you were not able to understand what I was asking, but you went ahead and answered anyway? Anything like that at all?" [Record No. 96, p. 30] Flores responded that there was not. *Id.*

A review of the re-arraignment transcripts demonstrates that Flores's claim that he was "not allowed" to address the Court is simply inaccurate. The Court spoke extensively with Flores during his re-arraignment hearing. Flores also addressed the Court directly during sentencing, stating: "I took a bad decision to be with those people." [Record No. 185, p. 101] Ordinarily, Flores would be held to all the statements he made under oath in open court, without further inquiry. *See Baker*, 781 F.2d at 90. However, Flores now appears to claim that his answers during re-arraignment were based on Carman's directive to "just say yes" to

all of the Court's questions. Because the court cannot resolve this issue without making credibility determinations and assessing the alleged off-the-record conversations between Flores, Carman, and perhaps Lopez, an evidentiary hearing is required to resolve this claim. *See MacLloyd v. United States*, 684 F. App'x 555, 561-62 (6th Cir. 2017).

Flores also contends that he was deprived "a fair opportunity to review and amend the PSR with the effective assistance of counsels." [Record No. 209-2, p. 9] Flores was sentenced on January 27, 2016. His PSR was prepared on December 23, 2015, and disclosed to his attorneys by January 6, 2016, at the latest. Carman sent an e-mail to the United States Probation Office on that date, with copies to Lopez and the Assistant United States Attorney, asserting several objections to the PSR. Flores does not state that he was actually precluded from reviewing the PSR prior to sentencing, nor does he explain why he did not have a "fair opportunity" to do so. Instead, Flores acknowledged at the outset of the sentencing hearing that "he had the opportunity to review [his] presentence report and also to discuss the report with his attorneys to his satisfaction." [Record No. 185, p. 3] Regardless, Flores has not stated how he was prejudiced by this alleged deprivation, as required under *Strickland*, 466 U.S at 694.

Flores goes on to argue that Carman and Lopez made various mistakes of constitutional magnitude during sentencing, but his individual arguments are poorly developed and often difficult to follow. First, he claims that his attorneys did not "familiarize with the correct application of U.S. Sentencing Guidelines and prepare for sentencing." [Record No. 209-1, p. 4] It is not entirely clear why he thinks so. Flores devotes a significant portion of his memorandum discussing the drug quantities attributed to him at sentencing. However, he acknowledged through his plea agreement that his relevant conduct included at least 1.5

kilograms but less than 4.5 kilograms of actual methamphetamine, and at least five but less than 15 kilograms of cocaine. Flores also agreed that his guidelines base offense level was 36. Counsel did not perform unreasonably by failing to object to the drug quantities or the base offense level to which the defendant had already conceded in his plea agreement.[1] *See Birdse v. United States*, Nos. 13-cv-02894, 13-cv-02895, 2016 WL 4250476, *8 (W.D. Tenn. Aug. 10, 2016).

Flores also complains that his criminal history was overstated at sentencing. [Record No. 209-2, pp. 7-8] However, Flores was on probation for aggravated driving under the influence in Illinois when he committed the offenses at issue in this matter. This resulted in a criminal history computation of three and a criminal history category of II. *See* U.S.S.G. §§ 4A1.1, 4A1.2(m). Attorneys Carman and Lopez objected to these calculations and argued zealously during the sentencing hearing that the Court should grant a downward departure based on the circumstances of the case. [Record No. 185, pp. 5-7] Flores has not identified any non-frivolous argument that his attorneys could have raised with respect to his criminal history computation, nor has he otherwise shown that counsel made such serious errors that they were not functioning as the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687-88; *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

---

[1] As previously discussed, the Court will hold an evidentiary hearing regarding the knowing and voluntary nature of Flores' guilty plea. To the extent Flores "doubted the existence of methamphetamine during [the] plea colloquy," it is unclear whether he expressed such doubts to attorney Carman and what impact, if any, these doubts had on Flores' decision to enter a guilty plea. [*See* Record Nos. 209-1, p. 4; 209-2, p. 20.] The parties should be prepared to address this issue during the evidentiary hearing.

Flores contends that, had Carman and Lopez been more knowledgeable about the United States Sentencing Guidelines, they would have argued against "impermissible double counting." [Record No. 209-2, p. 10] Specifically, he contends that this Court erred in considering the quantity of drugs, his leadership role and criminal history, and his family ties in the United States under 18 U.S.C. § 3553(a). While these issues may give rise to arguments for departures under the guidelines, they may also be considered under § 3553(a)(1). And in fact, Flores's attorneys asked the Court to consider his familial connections and limited criminal history as mitigating factors. [Record No. 185, p. 98] Next, as reflected at pages 86-89 of the sentencing transcript, Flores's counsel also argued that he should have not receive a leadership role under U.S.S.G. § 3B1.1(a). [Record No. 185, pp. 86-89] But unfortunately for Flores the facts did not support his position. *Id.* at 89-94.

Flores contends that Carman and Lopez failed "to present clarifying evidence to antagonize court's misestimation of character with mitigating and characteristic material evidence." [Record No. 209-2, pp. 4-5] While this argument is not entirely clear, defendant has not identified any evidence, mitigating or otherwise, that his attorneys should have presented during sentencing, but did not. A § 2255 motion cannot stand on "vague and conclusory assertions of a constitutional violation; rather, the [motion] must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error." *Robinson v. United States*, 582 F. Supp. 2d 919 (N.D. Ohio 2008) (citing *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992)). Accordingly, this claim is without merit.

Finally, Flores devotes a significant portion of the memorandum in support of his § 2255 motion outlining the reasons he believes his co-defendants Beltran and Canto lied when they testified during his sentencing. It is unclear how this relates to his ineffective-assistance-

of-counsel claims, but attorney Lopez vigorously cross-examined both witnesses. Much of the cross-examination dealt with the same factors Flores raises now: that is, the co-defendants' alleged drug dealing activities and the purported inconsistencies in their statements. Lopez argued to the Court that the witnesses were not credible and they contradicted one another when it came whether Flores directed certain drug deliveries. Although the Court ultimately deemed the discrepancies to be minor ones that did not impact the witnesses' credibility, counsel argued this point thoroughly.

**B.**

After attorney Carman filed a Notice of Appeal on Flores's behalf and was permitted to withdraw from further representation of the defendant. Thereafter, Mark Wettle was appointed as counsel for purposes of appeal. Wettle argued on Flores's behalf that this Court erred by departing upward from the guidelines range without the prior notice required by Federal Rule Criminal Procedure 32(h). *United States v. Flores*, No. 16-5138. However, the United States Court of Appeals for the Sixth Circuit determined that this Court's deviation from the guidelines range was a variance pursuant to the factors enumerated in 18 U.S.C. § 3553(a). Accordingly, no prior notice was required.

Flores contends that Wettle's representation was constitutionally deficient because he failed to raise a variety of other arguments on appeal. [Record No. 209-2, p. 12-13] However, "the decision of which among the possible claims to pursue on appeal is entrusted to counsel's professional judgment, which is presumed to be effective unless the ignored issues are clearly stronger than those presented." *Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014) (citing *McFarland v. Yukins*, 365 F.3d 688, 710 (6th Cir. 2004)); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). Further, "the process of winnowing out weaker arguments on

appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Sullivan*, 587 F. App'x at 942 (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

In this case, appellate counsel's decision clearly was within the realm of reasonable professional judgment. Had Wettle pursued Flores's claim that he was not a leader or organizer under U.S.S.G. § 3B1.1, the Sixth Circuit would have applied a deferential standard of review, most likely clear error. *See United States v. Arellanes-Pena*, 729 F. App'x 430 (6th Cir. 2018) ( "If answering a question "entails primarily . . . factual work," we review for clear error.") (quoting *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018)). This Court's decision to assign the four-level leadership enhancement was a heavily factual determination, particularly because it was based upon the testimony of two witnesses whose testimony this Court deemed credible.

Wettle also acted reasonably in declining to pursue a claim on appeal regarding Flores's criminal history calculation. The precise argument Flores wished to raise is unclear, but he does not appear to contest his criminal history as stated in the PSR. [*See* Record No. 209-2, p. 8.] Instead, Flores argues that he has not been convicted of violating the conditions of his probation in Illinois.

One criminal history point was attributed to the aggravated driving under the influence conviction from which the probation arose. *See* U.S.S.G. § 4A1.1. Two other criminal history points were added because Flores was on probation when he engaged in the drug conspiracies at issue in this case. *See id.* at § 4A1.2(m). Whether Flores had been convicted for the probation violation makes no difference. Regardless of the standard of review, this argument is without merit and appellate counsel was not required to raise it. *See United States v. Green*,

729 F. App'x 416, 419 (6th Cir. 2018) (reviewing challenge to criminal history for plain error where defendant had not raised precise arguments previously).

Flores also contends that Wettle should have raised issues including his right to testify, "lodestar guideline range," impermissible double counting, and "reasonableness of sentence assessments." [Record No. 209-2, p. 13] However, he has not explained what Wettle should have argued and why these issues would have been likely to make a difference in the outcome of his appeal. The basis of his "right to testify" assertion is unclear, as he pleaded guilty in lieu of a trial. Sentences generally are reviewed for abuse of discretion, and Flores has not presented any argument to suggest that his sentence was procedurally or substantively unreasonable. *See United States v. Rios*, 830 F.3d 403, 435 (6th Cir. 2016). Accordingly, Wettle did not provide ineffective representation on appeal by failing to raise these claims.

Finally, Flores asserts that Wettle was ineffective *per se* because he failed to file a petition for a writ of certiorari to the United States Supreme Court, as Flores requested. But unlike a direct appeal, review by the Supreme Court is discretionary and Flores does not have a constitutional right to pursue a petition for a writ of certiorari. *See Washpun v. United States*, 109 F. App'x 733, 735 (6th Cir. 2004) (citing *Wainwright v. Torna*, 455 U.S. 586, 587 (1982)). Where a defendant has no right to counsel, he cannot be deprived of the effective assistance of counsel. *Id.* (citing *Wainwright*, 455 U.S. at 587-88). Accordingly, Flores cannot successfully claim that Wettle's failure to file a petition for a writ of certiorari to the Supreme Court amounts to ineffective assistance of counsel.

## IV.

Because the Court will conduct a hearing solely on the issue of the content and circumstances of any off-the-record communications between the defendant and attorney

Carman that would affect the validity of Flores's guilty plea, the Court must consider appointment of counsel. *See* Rue 8(c), Rules Governing Section 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."). The Court will instruct the Clerk to provide Defendant Flores an appropriate CJA affidavit form to demonstrate any financial inability to retain counsel. Upon timely receipt of a request for appointed counsel and the qualifying affidavit, the Court will proceed to appoint counsel under Rule 8.

V.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The Clerk shall promptly provide to Defendant a CJA Financial Affidavit (CJA 23).

2. Defendant shall return the completed CJA 23 with a written request for appointment of counsel before **December 3, 2018.**

3. The Court will conduct an evidentiary hearing consistent with the terms of this Order on **Friday, February 1, 2019**, beginning at the hour of **9:00 a.m.**, at the United States Courthouse in Lexington, Kentucky.

4. The United States Attorney's Office shall secure and serve any forms required by the Bureau of Prisons to assure the defendant's presence at the hearing.

5. Attorneys Daniel Carman and Joseph Lopez are directed to be present at the evidentiary hearing. The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to these attorneys.

Dated: November 16, 2018.



Signed By:
*Danny C. Reeves*
United States District Judge