UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 15-050-DCR-6 |
| ) | and |
| V. ) | Civil Action No. 5: 18-484-DCR |
| ) | |
| EDGAR LERMA FLORES, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Edgar Lerma Flores claims that his true name is "Carlos Alberto Penuelas Rodriguez". However, he has used "Edgar Lerma Flores" as well as other aliases while in the United States illegally. [*See* Presentence Investigation Report, p. 3, filed under seal pursuant to Rule 32 of the Federal Rules of Criminal Procedure; Record No. 157.] Flores was arrested in Lexington, Kentucky, in May 2015 and later indicted for conspiring to distribute significant quantities of controlled substances and distributing those controlled substances within the Eastern District of Kentucky. [Record No. 17] A jury trial for Flores and several co-defendants was originally scheduled to begin August 17, 2015. [*See* Record Nos. 25, 26, 27, 28, 30, and 31.] However, that date was extended to October 7, 2015, at the request of several of the defendants. [Record No. 47]

On August 17, 2015, two of the defendants [Romeo Beltran and Eric Ricardo Canto] filed motions to be re-arraigned for the purpose of entering guilty pleas. And each defendant agreed to cooperate with the United States in the investigation and prosecution of others, including their co-defendants in the case. [Record Nos. 48 and 49] The remaining four

- 1 -

defendants – including Flores – filed motions for re-arraignment on September 28, 2015 (two days prior to the final pre-trial conference and in accordance with paragraph 4(a) of the Court's Pretrial and Discovery Order). [*See* Record Nos. 60, 62, 63, 64 and 29.] Those motions were granted and change-of-plea hearings were scheduled for Defendants Didier Olvera Romero, Reynaldo Salgado Valle, and Alan Solis Ballados for September 30, 2015. Flores change-of-plea hearing was scheduled and held on October 7, 2015. Thus, by the time he appeared for re-arraignment, all of his co-defendants had entered guilty pleas and two had agreed to cooperate with the government.

Flores's guilty plea was entered at a hearing held on October 7, 2015. The hearing proceeded without incident. However, following Flores's sentencing hearing, the defendant unsuccessfully filed a direct appeal, challenging the sentence imposed by the Court. In relevant part, Flores argued on appeal that the Court erred by failing to provide notice that he would be sentenced above his Guidelines range. [Record No. 198] The mandate affirming Flores's sentence was filed August 24, 2017. [Record No. 199] However, Flores later claimed that his appellate counsel had failed to file a petition for certiorari with the Supreme Court as he had requested. As a result of that claim, Flores moved the United States Court of Appeals to recall the mandate. That request was denied May 31, 2018. [Record No. 207]

Flores filed a motion to vacate, set aside or correct his sentence pursuant to 18 U.S.C. § 2255 on August 3, 2018. Flores raised a host of claims in his motion, including arguments that his trial and appellate counsel "rendered deficient performance" by: failing to secure a more favorable plea agreement with a "certified cap condition" [i.e., a binding plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure]; lack of knowledge and failure to argue relevant provisions of the United States Sentencing Guidelines; failing to

prepare for the sentencing hearing; "failure to clarify evidence to antagonize court's misestimation of character with mitigating & characteristic material evidence"; "failure to include 'guarded' meritorious issues for [appellate] review and "refusal to submit writ of certiorari as instructed"; and allowing introduction of perjured testimony during the sentencing hearing. [Record No. 209] Flores also claimed that one of his trial attorneys, Dan Carman, provided ineffective assistance by promising that he had obtained a "benign bargain" with the government whereby the defendant would receive a sentence of approximately four to seven years in exchange for his guilty plea. [Record No. 209-1, pp. 4-5]

With one exception, Flores claims were rejected in a Memorandum Opinion and Order filed November 16, 2018. [Record No. 220] However, the Court determined that an evidentiary hearing was needed to resolve the defendant's claim that his attorney, Dan Carman, promised him that he would receive a sentence of five to seven years' imprisonment if he simply followed Carman's instructions and pleaded guilty. The Court conducted an evidentiary hearing on January 29, 2019, during which Flores and his trial attorneys [Carman and Joseph Lopez] testified regarding the circumstances surrounding Flores's guilty plea.

Having considered all testimony and evidence, the Court finds that attorney Carman did not promise a sentence of four to seven years (or any other term of years) in allegedly convincing Flores to enter a guilty plea. Likewise, Carman did not apply any undue pressure in connection with the defendant's change-of-plea. The Court also finds that Flores was not mistaken but, instead, fully understood the potential penalties in the case. In short, because

the Court concludes that Flores's counsel did not render ineffective assistance and that his guilty plea was knowing and voluntary, the § 2255 motion will be denied.[1]

**I.**

Flores was charged in June 2015 with conspiring to distribute 5 kilograms or more of a mixture or substance containing cocaine (count 1); conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine (count 2); possessing with the intent to distribute 5 kilograms or more of a mixture or substance containing cocaine (count 6); and possessing with the intent to distribute 500 grams or more of a mixture or substance containing methamphetamine (count 7). [Record No. 17] Initially, counsel was appointed pursuant to the Criminal Justice Act. However, Flores's family later retained Carman. Flores filed a motion for re-arraignment on September 28, 2015, with Carman's assistance. Under the proposed plea agreement, Flores agreed to plead guilty to counts 1 and 2, each of which carried a statutory penalty of not less than ten years' imprisonment. [Record No. 124, p. 4] The government agreed to move to dismiss the remaining counts.

---

[1] Flores continued to argue during the January 29, 2019, hearing that attorney Carman performed ineffectively in a number of other ways, such as refusing to provide him copies of discovery materials and failing to provide a copy of his plea agreement transcribed in his native Spanish language. While many of these claims were considered and addressed in the Memorandum Opinion and Order filed on November 16, 2019 [Record No. 220], the Court has again considered these assertions and concludes that they do not change the analysis or outcome of Flores's claims. Relevant discovery was discussed with Flores. Likewise, the Court finds that attorney Carman discussed all relevant parts of the plea agreement with the defendant with the assistance of a Spanish-speaking assistant. Flores was neither confused nor mistaken by the terms of the plea agreement. And he was fully advised by the Court during the change-of-plea hearing that: (i) he would be subject to a mandatory minimum term of incarceration of at least ten years, and perhaps longer; (ii) his guideline range of incarceration could not be determined until his Presentence Investigation Report had been prepared; and (iii) in addition to his guidelines range, the Court would consider the statutory factors outlined in 18 U.S.C. § 3553(a) in determining the final sentence in the case. Neither the parties nor the Court addressed the possibility of a binding plea agreement at any point during the hearing.

The pertinent facts are outlined in the plea agreement and provide the following:

Law enforcement officers developed a cooperating source ("CS") in April 2015 who was able to purchase methamphetamine from Flores's co-defendant Romeo Beltran. [Record No. 124, pp. 2-4] Beltran and another co-defendant, Eric Canto, sold methamphetamine to the CS on three occasions between April and May 2015. The CS and an undercover law enforcement officer ("UC") arranged the final transaction on May 13, 2015. Agents observed Canto meeting with the CS and UC near North Broadway in Lexington, Kentucky. Agents then followed Canto to an address on Lighthouse Lane, where he went inside. Within a few minutes, the garage door at the Lighthouse Lane residence opened and a tan Tahoe exited. Canto then came out of the residence with a plastic bag containing eight ounces of crystal methamphetamine, which he delivered to the CS and UC. He was stopped by law enforcement officers after Canto left the transaction spot.

The tan Tahoe previously observed leaving the Lighthouse Lane residence passed within feet of Canto's vehicle while it was stopped by law enforcement. Shortly thereafter, the Tahoe arrived back at the Lighthouse Lane location and backed into the garage. The Tahoe left the location again within a few minutes and also was stopped by law enforcement. Defendant Flores and others were inside the Tahoe, which contained five kilograms of cocaine hidden inside an air compressor. A subsequent search of the Lighthouse Lane residence produced an additional kilogram of cocaine and approximately seven pounds of crystal methamphetamine.

Flores admitted that he had engaged conspiracies to distribute methamphetamine and cocaine, as outlined in the plea agreement. Specifically, he conceded that he and the other individuals in the Tahoe were from Chicago and had supplied the methamphetamine that

Beltran and Canto sold to the CS and UC. Flores further admitted that he and the other individuals in the Tahoe had come from Chicago and brought 2.925 kilograms of methamphetamine to the Lighthouse Lane residence. He and the others would remain at the Lighthouse Lane residence until a "good portion" of the methamphetamine and cocaine had been sold. They would take the drug proceeds back to Chicago, as they had done on at least one other occasion.

## II.

As noted above, Flores raises several challenges involving Carman's performance and the affect it had on his decision to plead guilty. Flores agrees that Carman visited him at the Grayson County Detention Center prior to his entry of the guilty plea. He contends that the plea agreement was "summarized" to him in Spanish, but argues that Carman did not review the agreement with him line-by-line.

Carman testified that he spent well over an hour reviewing the plea agreement with Flores. He recalled that Flores had some frustration concerning count 2 because the evidence was stronger with respect to the count involving cocaine. But Carman noted that it is not uncommon for defendants to question how they can be convicted without being actually "caught" with the drugs at issue. However, Carman talked to Flores about the evidence in his case, the nature of conspiracy, and the benefits of taking a plea rather than proceeding to trial.

Flores's change-of-plea hearing was held on October 7, 2015. He asserts that he met with Carman just prior to the re-arraignment hearing and advised Carman that he could not plead guilty to count 2 because he was not "caught with cocaine." Flores maintains that Carman told him that he had to plead guilty to both counts to receive a sentence of five to

seven years. Flores also asserts that Carman refused to review the plea agreement with him, leading him to misunderstand the charges.

The Court asked Flores during the change-of-plea hearing whether he had discussed the case in general with Carman. [Record No. 96, pp. 7] Flores responded that he and Carman had not discussed the case fully and that he had not seen "part of the discovery." At that point, the Court allowed Carman and Flores to have further discussions off the record to clear up any misunderstandings or miscommunications. Flores now contends that, during this conversation, Carman told him that "everything was arranged" and he could be with his family soon if he pleaded guilty to both charges. Flores also testified that Carman said, "Trust me, you will not be in prison long—five to seven years. You have to answer 'yes' to everything, otherwise the judge will get mad."

Carman recalls the discussion quite differently. He remembers "slow[ing] down" and explaining the charges in plain and simple terms, summarizing the evidence, and reviewing with Flores the benefits of proceeding with a guilty plea. And Carman believed that Flores understood all of this by the conclusion of the conversation. Further, Carman testified that he never advised Flores that he could receive a sentence of five to seven years. He indicated that the only way a sentence of less than ten years would have come up was through discussion of the "safety valve," for which Flores was not eligible. During questioning from the Court during the January 29th hearing, Flores conceded that he never considered cooperating with the United States, as reflected in the supplement to his plea agreement, so a departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) was not a possibility.

Following the off-the-record conversation with Carman, Flores swore in open court that he understood the elements of counts 1 and 2 and that the information contained in the plea

agreement was correct. He also advised the Court that no one had made any promises or threats that had caused him to enter a guilty plea. [Record No. 96, p. 15] Flores reluctantly admits making these statements, but says that he only did so because he was under pressure from Carman, who was advising him that he should plead guilty. As discussed more fully below, the Court finds this assertion by Flores to be contrived.

Attorney Joseph Lopez entered an appearance on Flores's behalf on November 10, 2015. Lopez testified that Flores's family contacted him a few days prior the re-arraignment hearing on October 7, 2015. Lopez reported that he actually spoke to Flores by telephone on October 5, 2015, advising Flores that he faced a minimum sentence of ten years and that he was not eligible for application of the safety valve under 18 U.S.C. § 3553(f). Flores denies that he spoke to Lopez prior to entering the guilty plea. Likewise, the Court find this claim of the defendant to be false.

### III.

A guilty plea can be rendered involuntary as a result of the ineffective assistance of counsel. *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To demonstrate ineffective assistance, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show "prejudice in the guilty-plea context, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011) (citations and internal quotation marks omitted).

Flores has utterly failed to demonstrate that his guilty plea was the product of ineffective assistance of counsel. His claim that Carman promised him a sentence of five to seven years' imprisonment is not credible for a variety of reasons. First, such a promise defies logic in light of the undisputed facts. Pleading guilty to count 1 or 2 would ensure Flores a minimum sentence of 10 years' imprisonment pursuant to 18 U.S.C. § 841(b)(1)(A). He was not eligible for relief under 18 U.S.C. § 3553(f), because he had more than one criminal history point, was an organizer/leader in a criminal enterprise, and did not provide all relevant information concerning his involvement in the offenses to the government. Further, because Flores had no intention to cooperate with the government, he would not qualify for a sentence reduction under United States Sentencing Guidelines Section 5K1.1 and 18 U.S.C. § 3553(e).

It is also notable that Flores retained Attorney Lopez more than two months prior to sentencing and before the pre-sentence report was disclosed. If Carman had guaranteed Flores a sentence of five to seven years, it is difficult to conceive why Flores and his family would need to contact an additional attorney, who Flores believed was a "sentencing wizard." [Record No. 209-3, p. 2] Further, the Court deems credible Lopez's testimony regarding the October 5, 2016, telephone conversation during which Lopez advised Flores that he was "looking at a minimum of ten years."

Flores's own affidavit accompanying his § 2255 motion brings his claim into question. There, he alternatively claims that Carman promised him a sentence of four to seven years, six to seven years, and "about 10 years most [sic]." [Record No. 209-3, p. 2] And his testimony during the evidentiary hearing also lacked credibility. He was evasive when it came to answering counsels' and the Court's questions, even with respect to matters as mundane as the alias under which he was originally charged.

This Court observed scrupulous Rule 11 procedures during Flores's re-arraignment hearing, taking care to ensure that Flores understood the charges against him and the nature and consequences of his guilty plea. [Record No. 191] Flores now contends that he lied about understanding the charges because Attorney Carman told him to "just say yes." However, the Court gave Flores multiple opportunities to voice any misunderstanding, but he consistently affirmed to the Court, under oath, that he understood all of the proceedings.

Next, both Carman and Lopez believed that Flores understood his charges at the time of re-arraignment. [*See* Record No. 96, p. 7.] The Court reached that same conclusion at the time the guilty plea was entered. That conclusion has not changed after consideration of all the testimony presented regarding Flores's claims of ineffective assistance of counsel. As the Court has already explained, a lengthier sentence than expected is not grounds for withdrawing a guilty plea. *Id.* at p. 20. *See United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (Defendant may not make the tactical decision to enter a plea and then withdraw it several weeks later if he believes he made a bad choice in pleading guilty.). Further any erroneous prediction by counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea based on a claim of ineffective assistance. *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990).

Flores's sentence is substantially longer than those of some of his co-defendants, but there is a good reason for his longer sentence. Flores performed a leadership role in a drug organization that delivered and distributed large quantities of illegal drugs (i.e., cocaine and methamphetamine) from Chicago to the central Kentucky area. Defendants Beltran and Canto testified at Flores's sentencing hearing and provided credible testimony supporting a four-point guidelines adjustment for Flores's role as an organizer or leader in the criminal activity

involving five or more participants.  *See* U.S.S.G. § 3B1.1.  Beltran testified that he met Flores in Chicago through a mutual acquaintance in April 2015.  [Record No. 185, p. 14]  After some discussion about cocaine and marijuana, Flores and others delivered 280 pounds of marijuana from Chicago to a car repair shop in Lexington.  Flores advised Beltran that the price was $800.00 per pound and Beltran sold it within two or three weeks.

Beltran also testified that Flores made several trips from Chicago to Lexington during which Flores would pick up proceeds from the drug sales.  Beltran described Flores as the leader of the operation and said that Flores was "in charge" of bringing controlled substances into Kentucky, Ohio, and Tennessee.  *Id.* at p. 30.  Beltran believed that Flores got the drugs from his cousins in Mexico because he heard Flores talk about it a lot.  *Id.* at p. 66.  Flores counted the money, advised Beltran of the prices of the drugs, and instructed him how to pack the drugs.  Flores instructed Beltran to sell the substances to "whoever," but not while Flores was in town because he did not want to "bring the heat" to where he was staying.  *Id.* at p. 43.

Beltran reported that Eric Canto sold most of the methamphetamine that Flores brought into Lexington.  *Id.* at pp. 32-33.  Canto testified that he spent time with Flores and others when drugs were around.  He testified that Flores was the leader of the Chicago individuals and told them what and what not do to.  *Id.* at pp. 73-75.

Carman argued during the sentencing hearing that "anything 10 years or above would afford adequate deterrence to [Flores]."  However, the government advocated for a sentence at the top of the 235-to-293-month guidelines range or higher, based on the defendant's leadership role in bringing large quantities of pure methamphetamine in Kentucky.  The Court concluded that both general and specific deterrence would be better served by a lengthy sentence and that the guideline range was not sufficient in this case.  Accordingly, the Court

varied upward to a sentence of 300 months (seven months above the top of the defendant's guidelines range). *Id.* at pp. 112-13. While this sentence may be longer than Flores expected, he has failed to identify any ground upon which it should be disturbed.

### IV.

The defendant must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying his habeas motion. 28 U.S.C. § 2253(c)(1). However, a COA will not issue unless the movant makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits. To satisfy this showing, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court concludes that a COA will not issue in this case.

### V.

For on the reasons set out above and those outlined in the Memorandum Opinion and Order entered November 16, 2018 [Record No. 220], it is hereby

**ORDERED** as follows:

1. Defendant/Movant Flores's motion under 28 U.S.C. § 2255 is **DENIED**.
2. A Certificate of Appealability shall not issue.

Dated: January 31, 2019.


Signed By:
*Danny C. Reeves*
United States District Judge