UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>EDGAR LERMA FLORES, )<br>)<br>Defendant. ) | Criminal Action No. 5: 15-050-DCR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

*** *** *** ***

Defendant Edgar Flores has filed a motion seeking a retroactive sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. [Record No. 304] His motion follows the Court's entry of a Notice, which detailed the findings of the Court's self-initiated consideration of a sentence reduction for Flores. [Record No. 294] While the Court's filing provided *notice* that it did not intend to reduce Flores' sentence *sua sponte*, the Court has since made clear that no *final decision* had been rendered and that Flores was not precluded from filing a motion for a sentence reduction based on Amendment 821. [Record No. 303]

Flores advises that his failure to timely respond to the Court's previous inquiry was due to a failure on the part of counsel. [Record No. 304, p. 4] Nonetheless, Flores has now had the benefit of drafting his motion in light of the Government's stated objections and the Court's articulated findings—an opportunity he acknowledges. [*Id.*] For the sake of efficiency, the Court will incorporate by reference the background and analysis appearing in the Notice entered February 14, 2024. [Record No. 294] Although the discussion herein will focus

primarily on the arguments raised for the first time in the instant motion, the issues previously discussed will receive a fresh look as the Court contemplates Flores' motion.

## I.

The Court begins by clarifying that a motion brought pursuant to 18 U.S.C. § 3582(c)(2) is not an additional opportunity to appeal one's sentence. The first two arguments raised in Flores' motion attempt to do just that. Accordingly, they will not be considered. Flores previously invoked his right to appeal, and his sentence was upheld by the United States Court of Appeals for the Sixth Circuit. [*See* Record No. 198]

The question before the Court is whether a reduced sentence would remain sufficient, but not greater than necessary, to accomplish the purposes set forth in § 3553(a). Some of the relevant factors include, "the nature and circumstances of the offense"; the defendant's "history and characteristics"; the need for the sentence "to reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence," and "protect the public." 18 U.S.C. § 3553(a)(1)–(2)(C).

### A.

Flores argues that, at the time of his sentencing, significant weight was placed on the purity of the methamphetamine. [Record No. 304, pp. 6–7] He also asserts that "across the United States, courts are consistently making no distinction between methamphetamine types." [*Id.*] This argument speaks to the nature and circumstances of the offense and, therefore, is appropriate to raise. The assertion, however, is without merit.

It is certainly true that when calculating a converted drug weight, the Sentencing Guidelines treat "actual" methamphetamine ten times more harshly than a mixture containing

methamphetamine. *See* USSG § 2D1.1, comment. (n.8(D)). This disparity is in partial recognition of the fact that the purity of a controlled substance is probative of the defendant's role in the chain of distribution. *See* USSG § 2D1.1, comment. (n.27(C)).

> Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

*Id.* Being subject to a higher initial guideline range for incarceration for dealing in pure or "actual" methamphetamine is a consequence of the Sentencing Guidelines. However, the undersigned agrees that this is a correct and important distinction. To the extent that the Court acknowledged this fact, it was merely to affirm the finding that Flores "was at the top of the food chain." [Record No. 185, p. 109]

Flores provides no evidence of courts across the country consistently disregarding the Sentencing Commission's guidance in this area. But even if he had, this Court would not be obligated to follow suit. "[A] district court cannot be said to have abused its discretion merely because it *followed* [the Guidelines] (and agreed with its policies)." *United States v. Lynde*, 926 F.3d 275, 280 (6th Cir. 2019) (emphasis in original). And district courts are not obligated to take a "lowest common denominator" approach.

**B.**

Next, Flores makes the following insinuation: "[T]he Government's reliance and consistent allusion to Mr. Flores' race as a Mexican being a reason for an above-the-Guideline sentence should be alarming." [Record No. 304, p. 7] Flores' decision to cast such a baseless aspersion is revealing. His motion cites the transcript of his sentencing hearing, so he is aware that his assertion is baseless and completely without merit.

While Flores' connection to Mexico is highly relevant—his race and ethnicity are not. He was involved in an international drug-trafficking operation that moved drugs into the United States from Mexico. And his unlawful entry into the country from Mexico serves to further highlight his lack of respect for the laws of this country. During the sentencing hearing, his attorney cited Flores' ties to Mexico favorably as a justification for not requiring a lengthy period of supervised release. [Record No. 185, p. 100] Beyond those relevant and proper considerations, Flores' connection to Mexico had no bearing on the Court's sentencing decision.

## C.

Flores also asks the Court to consider his family life and criminal history.[1] He describes himself as a "family man," providing over a dozen letters of support from family members in the United States and Mexico. [Record No. 304-3, pp. 1–14] The Court has read these letters, as well as the letter authored by Flores himself. [*Id.* at 15] And it is apparent that Flores' actions have left a large void in what appears to be a loving and close-knit family.

But the Court is also mindful of the countless families who have been permanently deprived of their loved ones by the very types of drugs that the defendant willingly introduced into this community. In 2015, the year Flores was arrested, the Commonwealth of Kentucky had the third highest age-adjusted drug overdose death rate in the United States.[2] While he

---

[1] Flores' limited criminal history was accounted for at the time of his sentencing. [*See* Record No. 185, pp. 97–99.] While it will be considered as an element of the Court's overall assessment, it will not be discussed separately.

[2] *See* Holly Hedegaard et al., NCHS Data Brief No. 273, *Drug Overdose Deaths in the United States, 1999–2015* (Feb. 2017).

now professes a "want to help the community," Flores' offense of conviction demonstrates a complete disregard for the safety of others. [Record No. 304-3, p. 15]

Flores' letter to the Court notes that during his incarceration he has "learned and matured," that he sold drugs because he "was poorly advised by older people," but has since "been rehabilitated." [*Id.*] At the time of his arrest, Flores was 27 years old, had fathered a child, and was a leader in an international drug-trafficking operation. [*See* PSR ¶¶ 2, 12, 38.] Both he and his family emphasize the paternal leadership role Flores' assumed early on in life, serving as a stand-in for his father who passed away when he was young. He notes having worked since he was 14 years-old, being competent at welding, plumbing, electrical and mechanical work, and landscaping. [Record No. 304-3, p. 15] The claim of naiveté and immaturity is undermined by every letter that Flores has asked the Court to consider. As the Court has already observed: "He's selling because of the money that's involved in this lucrative drug trade." [Record No. 185, p. 111]

### D.

The last item that Flores asks the Court to consider is his conduct over the course of his incarceration. In the earlier Notice, the Court observed that Flores "was disciplined for possessing a hazardous tool—an act the Bureau of Prisons categorizes as a 'Greatest Severity Level Prohibited Act.'" [Record No. 294, p. 3] Flores explains that the item in his possession was a "stinger,"[3] and although he admits it constitutes a contraband violation ("Moderate Severity Level Prohibited Act"), he wishes for the Court to know that the infraction makes his conduct appear worse than it was. [Record No. 304-3, p. 9] While the undersigned has not

---

[3] A "stinger" is a makeshift water heater fashioned from an electrical cable.

verified the specifics of Flores' claim, he will be granted the benefit of the doubt on this point. However, it does not alter the Court's analysis or conclusion.

## II.

In resolving the instant motion, the Court considers its previous findings as well as those derived from the defendant's newly raised arguments. [*See* Record Nos. 294, 304] For the reasons previously articulated, the Court continues to believe that reducing Flores' sentence would be wholly inappropriate. Flores received an upward variance at sentencing because a guidelines-range sentence was insufficient to accomplish the purposes set forth in § 3553(a). It remains the Court's view that his sentence continues to be sufficient, but not greater than necessary, to achieve the goals and purposes of sentencing. Accordingly, it is hereby

**ORDERED** that Defendant Flores' motion for a sentence reduction based on Amendment 821 [Record No. 304] is **DENIED**.

Dated: April 26, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky